85 F.Supp. 429 (1949)
DOUDS
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, DRIVERS LOCAL UNION NO. 807, A.F.L.
Civ. No. 50-390.
United States District Court S. D. New York.
July 13, 1949.
Robert N. Denham, General Counsel, David P. Findling, Associate General Counsel, Winthrop A. Johns, Assistant General Counsel, Washington D. C., James V. Altieri and Oscar Geltman, New York City, for National Labor Relations Board.
Boudin, Cohn & Glickstein, New York City, for respondent (Sidney E. Cohn, New York City, of counsel), for respondent.
COXE, District Judge.
This petition was filed under Section 10(l) of the Labor Management Relations Act, 1947, 29 U.S.C.A. § 160(l), by Douds, a Regional Director of the National Labor Relations Board, to enjoin the respondent, Local Union No. 807, A.F.L., from engaging in certain activities which, it is asserted, are in violation of Section 8(b) (4) (A) of the Act, 29 U.S.C.A. § 158(b) (4) (A), pending final determination of the matter by the Board. The petition was filed after investigation by the Director of a charge filed with him by Sterling Beverages, Inc., that the Union had been engaging in unfair labor practices prohibited by Section 8(b) (4) (A), and a finding by *430 him that he had reasonable cause to believe that the charge was true. The matter was heard upon the petition and the testimony of a few witnesses called by both parties.
Sterling Beverages, Inc., is a Massachusetts corporation, with its headquarters in North Westport, Mass. It is engaged in the business of selling and distributing at wholesale beer purchased from Jacob Ruppert, whose brewery is located at 1639 Third Avenue, New York City. It is the exclusive distributor of such beer in several counties in southeastern Massachusetts. Its sales amount to more than $1,500,000 annually. It owns and operates a fleet of motor trucks which it uses to transport the beer from New York City to North Westport, and to bring back the empty kegs and cases. Its truck-drivers are, and for some time have been, members of Local 526 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, A.F.L., whose headquarters are at Fall River, Mass. It has never employed any members of the respondent Local, whose headquarters are in New York City.
Ruppert's brewery covers several square blocks between Third and Second Avenues, running North from East 90th Street, in New York City. In this area there are a number of short driveways, or passageways, 50 feet or so in length, leading directly from the adjacent streets to different loading and unloading platforms which are either a part of, or adjacent to, the brewery buildings, and are either at the end of, or alongside, the driveways. The method of handling the work has always been for the Sterling driver, in accordance with the directions of a brewery employee, to back his truck from the street into one of these driveways and stop at the unloading platform, where the brewery employees unloaded the empty kegs and cases, or, if all were not unloaded there, to move to another unloading platform, where the work of unloading was completed. The truck was then loaded by the brewery employees with full kegs and cases, either at this last unloading platform or at a loading platform to which the Sterling driver had moved it. When loaded, the driver took it out to the street and back to Massachusetts. The Sterling drivers did not assist in loading or unloading the trucks, nor did the brewery employees assist in moving the trucks.
In March 1949, the officials of the respondent Local demanded of Sterling that it employ only members of their Local to perform the aforesaid work in connection with the loading and unloading of its trucks at Ruppert's brewery, claiming that only its members had the right to perform such service work in New York City. After Sterling had refused to comply, the respondent began to picket the entrances to Ruppert's driveways whenever a Sterling truck appeared. The picketing was peaceful, and consisted only of one or two persons, members of respondent Local, carrying back and forth along the street in front of the entrance to the driveway, so long as the truck was there, a sign with the words:
"Sterling Beverage refuses to employ members of Local 807.
"Help us to protect our wages and working conditions.
"Unfair to truck drivers of I.B. of T.C. W. and H., Local 807.
"Affiliated with American Federation of Labor."
The result was that Ruppert's employees seeing the pickets and the placard, refused either to unload or to load the Sterling trucks, and their drivers returned home. It does not appear that respondent has picketed, or attempted to picket, Sterling's trucks at any place other than Ruppert's brewery. Nor does it appear that Sterling's drivers, or the Union to which they belong, have any grievance against Ruppert or against Sterling.
Petitioner contends that this picketing constituted an unfair labor practice, prohibited by Section 8(b) (4) (A) of the Act. This section provides: "It shall be an unfair labor practice for a labor organization or its agents * * * to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their *431 employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is: (A) forcing or requiring * * * any employer or other person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person; * * *."
Respondent insists, however, that Section 8(b) (4) (A) was not intended to apply to such a situation as this, where the picketing was peaceful, without the expression of any views containing a "threat of reprisal or force or promise of benefit" (declared by Section 8(c) of the Act not to constitute evidence of an unfair labor practice), and where the avowed purpose of the picketing was only the inducing of the employees of Sterling Beverages, which has no place of business in New York City and is described as the primary employer directly involved in a labor dispute with respondent, not to back their trucks into Ruppert's driveways and pick up merchandise to be transported back to Sterling's warehouse in Massachusetts, and thus to force Sterling Beverages to employ only members of respondent for that purpose. It is also argued that such peaceful picketing constitutes merely the exercise of the right of free speech, which is protected by the Constitution.
I think that, upon the facts in the present record, the Regional Director was justified in concluding that there was reasonable cause to believe that respondent was guilty of an unfair labor practice prohibited by Section 8(b) (4) (A). While the primary purpose of the picketing may well have been, and doubtless was, to induce the employees of Sterling Beverages not to do the work of moving their trucks about on Ruppert's property, and thus to force Sterling Beverages to employ members of respondent to do this work, I think that the inescapable result, if not purpose, of the picketing was to induce the employees of Ruppert to engage in a concerted refusal to perform their services in connection with the unloading and loading of the Sterling trucks, and thereby to cause Ruppert to cease doing business with Sterling. If the picketing had been carried on at some place other than the street from which the driveways led to the loading and unloading platforms, this may not have been the result; but it cannot fairly be said to have been a mere incident of the picketing. Picketing, though peaceful, may not now be lawfully carried on upon or near the premises of an employer who is not a party to the dispute; it then becomes a secondary boycott, against which Section 8(b) (4) (A) is aimed. Printing Specialties & Paper Converters Union, etc., v. Le Baron, 9 Cir., 171 F.2d 331. This case also held that prohibiting of picketing under somewhat similar circumstances was not an invasion of the constitutional rights of free speech. See also Carpenters & Joiners Union of America, etc., v. Ritter's Cafe, 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143; and Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 69 S.Ct. 684.
Petitioner's application for a preliminary injunction is granted.