NATIONAL LABOR RELATIONS BOARD v. WINE, LIQUOR & DISTILLERY WORKERS UNION, LOCAL I, DISTILLERY, RECTIFYING AND WINE WORKERS INTERNATIONAL UNION OF AMERICA, A. F. OF L.

**No. 29, Docket 2137-I.**

United States Court of Appeals Second Circuit.

Argued Nov. 7, 1949.

Decided Dec. 12, 1949.

Robert N. Denham, General Counsel, David P. Findling, Associate General Coun-sel, A. Norman Somers, Assistant General Counsel, Reeves R. Hilton, Dominick L. Manoli and Albert Dreyer, Washington, D. C., for National Labor Relations Board, Reeves R. Hilton, Washington, D. C., counsel.

Cohen & Burlakoff, New York City, Arnold Cohen, New York City, for respondent, Joseph E. Brill and Harold Krieger, New York City, on the brief.

Before AUGUSTUS N. HAND, CHASE and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The National Labor Relations Board petitions for enforcement of its order issued against respondent, Wine, Liquor & Distillery Workers Union, Local 1, Distillery, Rectifying and Wine Workers International Union of America, A. F. of L., pursuant to Section. 10(e) of the National Labor Relations Act, 29 U.S.C.A. § 160(e). Schenley Distillers, a Delaware corporation, is engaged in the manufacture and sale of whiskey and related products. It owns and operates approximately thirty distilleries located in various states other than New York, including one at Frankfort, Kentucky, operated by a wholly-owned subsidiary of Schenley, the George T. Stagg Company. Schenley maintains an office in New York City from which it sells its products to various distributors in the metropolitan area. The products are shipped directly to the distributors from the distilleries in states other than New York. The principal New York distributors receiving Schenley products are Jardine Liquor Corporation, Oxford Distributing Company, Peel, Richards, Ltd., McKesson & Robbins, Inc., Austin Nichols & Company, and Seggerman-Nixon Corporation, hereafter respectively referred to as Jardine, Oxford, Peel, McKesson, Austin and Seggerman. The last three handle substantial quantities of liquor manufactured by other distillers, but the first three deal almost exclusively in Schenley products. No financial or corporate relationship exists between any of these distributors and Schenley, or among the various distributors. The monthly sales of each distributor are large. Those of Jardine

alone have amounted to as much as $2,000,-000, of which approximately 85% represented sales of Schenley products.

The respondent Local 1 is a labor union composed of warehouse employees of distributors of alcoholic beverages in the New York metropolitan area, including employees of the above-mentioned distributors. This union is affiliated with Distillery, Rectifying and Wine Workers International Union of America, and has collective bargaining agreements with about 300 distributors, beside the above-mentioned six. The contracts with each provide that there shall be no strikes or lockouts except that "in the event an employer flagrantly disregards the terms and conditions and provisions of this contract and persists in his refusal to comply therewith then and in that event the union shall have the right to declare a stoppage * * *" Each contract further provides that: "All issues, grievances, disputes, or interpretations that may arise during the terms of the agreement" shall be submitted to arbitration, and "such arbitration shall be the sole remedy available to the parties."

In October 1947, a dispute arose in Kentucky between Stagg, Schenley's wholly-owned subsidiary, and respondent's sister union, Local 38, as to the renewal of a collective bargaining agreement governing wages, hours, and conditions of employment at the Stagg distillery. As a result of this dispute the members of Local 38 employed by Stagg went on strike on November 13, 1947. The strike lasted until December 12, when Stagg and Local 38 reached an agreement, and the men returned to work on December 15, 1947.

There were attempts by respondent Local 1 to persuade Schenley officials in New York and Jardine's president to straighten out the strike in the Stagg plant. Finally employees of Jardine, Peel and Oxford went on strike, and the employees of McKesson, Seggerman and Austin refused to handle Schenley goods. The Board found, upon sufficient evidence, that an object of the various work stoppages was to induce Schenley to agree to contract terms which the Kentucky local sought to obtain from Schenley's subsidiary Stagg. The Board held that these acts of the respondent were in violation of Section 8(b) (4) (A) of the Act, 29 U.S.C.A. § 158(b) (4) (A), and ordered the respondent to cease and desist from inducing its members to engage in a strike or concerted refusal to perform services for any employer where an object thereof is to require the employer or any other person to cease doing business with Schenley. In our opinion, the Board's conclusion was correct.

It is argued on behalf of the respondent that the cessation of work in the plants of the six distributors was due to unredressed local grievances and not to a boycott to support the strike in the Stagg plant. The intermediate report of the examiner, which was confirmed by the Board, shows that any local grievances were trivial and that, if and in so far as they did exist, no attempt was made to have them arbitrated pursuant to the terms of the various contracts. These findings are sufficient to overcome the claim that the cessation of the work was due to the existence of local grievances. But aside from this, the finding of the Board that an object of the work stoppage was to exert pressure on Schenley to induce it to agree to terms with respondent's sister Local 38 had ample support in the evidence. The course of respondent in supporting the employees of Stagg justified the Board's conclusion that the respondent engaged in a "secondary boycott" forbidden by Section 8(b) (4) (A) of the Taft-Hartley Act. It is not a defense that other motives may have entered into the action of the respondent. Section 8(b) (4) (A) forbids a work stoppage by the union when "an object thereof" is to require the employer to cease dealing in the products of another.

When "secondary boycotts" were discussed in the Senate in connection with the passage of the Taft-Hartley Act, Senator Taft said: "It has been set forth that there are good secondary boycotts and bad secondary boycotts. Our committee heard evidence for weeks and never succeeded in having any one tell us any difference between different kinds of secondary boycotts. So we have broadened the provision deal-

ing with secondary boycotts as to make them an unfair labor practice." 93 Daily Cong.Rec. 4323 (April 29, 1947.).

In view of Senator Taft's statement about the meaning of the section it seems idle for the respondent to argue that only such "secondary boycotts" as were unlawful at common law, or under the law of some particular state fall within the prohibitions of the section. The acts of the respondent in inducing the distributors not to deal in Schenley products until the grievances of the employees of Stagg were settled seem to have been clearly forbidden by the statute, and to have been incapable of justification through any intricate reasoning about rights at common law.

■ The respondent makes the further defense to the enforcement order that the distributors were socalled "allies" of Schenley and that their trade relations with it were so intimate that there was a community of interest which justified a strike as fully as though all the employees had belonged to the same company. This is a far-fetched argument, for the distributors had no relations with Schenley other than as independent corporations whose purchases for the market were largely of Schenley products.

The decision of Judge Rifkind in Douds v. Metropolitan Federation of Architects, etc., D.C., 75 F.Supp. 672, which the respondent seems to rely upon, is clearly inapplicable to the situation before us. That was a case where a parent and a subsidiary partnership were conducting enterprises alternately as business exigencies demanded. It was held that a strike which originated in the parent company might be extended to the subsidiary partnership without violation of Section 8(b) (4) (A). There the employees of the corporation and the partnership were all working for the same employer and had practically identical interests. Here the corporations were completely separate in ownership and management.

■ The only matter which remains for discussion is the contention of respondent that Section 8(b) (4) (A), if applicable, would be in violation of the First, Fifth and Thirteenth Amendments to the Constitution of the United States.

In discussing the First Amendment the respondent seems to rely on decisions of the Supreme Court forbidding restraints upon picketing which have gone too far in interfering with rights of freedom of speech, such as the court dealt with in Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093. We cannot see the bearing of such decisions upon the facts presented in the case at bar, where there was no picketing, and little, if any, effect upon freedom of speech. Moreover, legislative power exists "to set the limits of permissible contest open to industrial combatants." See Thornhill v. State of Alabama, supra, 310 U.S. at page 104, 60 S.Ct. at page 745, 84 L.Ed. 1093. The validity of a restraint depends upon a sound adjustment between acts and agreements deemed injurious to society and the freedom safeguarded by the First Amendment. Mr. Justice Black said in Giboney v. Empire Storage Co., 336 U.S. 490, at page 502, 69 S.Ct. 684, 691: "* * * it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." The unanimous opinion of the Supreme Court in the Giboney case seems to make it plain that Section 8 (b) (4) (A) of the Taft-Hartley Act cannot be regarded as invalid under the First Amendment to the Constitution.

Respondent's contention that Section 8(b) (4) (A) of the Taft-Hartley Act violates the Thirteenth Amendment to the Constitution is sufficiently answered by the recent opinion of the Supreme Court in International Union, U. A. W. A., A. F. of L., Local 232 et al. v. Wisconsin Employment Relations Board, 336 U.S. 245, 251, 69 S.Ct. 516. The argument that the above provision of the Act is indefinite and therefore violates the due process requirement of the Fifth Amendment is wholly without merit.

It should be added that the constitutionality of the provision forbidding "secondary boycotts" was sustained by the Courts of Appeal in the Ninth and Tenth

Circuits in Printing Specialties & Paper Converters Union, Local 338, A. F. of L. v. LeBaron, 171 F.2d 331; United Brotherhood of Carpenters & Joiners v. Sperry, 170 F.2d 863.

For the foregoing reasons a decree should issue enforcing the order of the National Labor Relations Board as prayed for in its petition.