**Gary James JOSLIN, Plaintiff,**

v.

**SECRETARY OF the DEPARTMENT OF the TREASURY, and the United States of America, Defendants.**

**Civ. No. C–84–0423W.**

United States District Court,
D. Utah, C.D.

June 25, 1985.

---

Gary James Joslin, Sandy, Utah, pro se.

Peter Stirba, Asst. U.S. Atty., Salt Lake City, Utah, and Glen Dawson, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This matter is before the court on the parties' cross motions for summary judgment. Neither party requested oral argument but each has submitted a memorandum. The plaintiff is acting *pro se* and the defendants are represented by Glen R. Dawson and Peter Stirba. The court has read carefully the memoranda and various authorities cited therein and now being fully advised renders the following decision and order.

Plaintiff challenges the constitutionality of regulations governing the standards of practice of attorneys and others who prepare opinions on tax shelter offerings. Those regulations are set forth in 31 C.F.R. § 10.33 (1984) and 31 C.F.R. § 10.52 (1984).

Those regulations became effective in May, 1984, and are apparently the first to provide guidelines directed at practitioners who render tax shelter opinions. The regulations direct the practitioner to make certain independent factual inquiries regarding the tax shelter investment before providing his opinion analyzing the federal tax effects of the plan in the offering circular. The practitioner must also, where possible, "provide an opinion whether it is more likely than not that an investor will prevail on the merits of each material tax issue presented by the offering which involves a reasonable possibility of a challenge by the Internal Revenue Service." 31 C.F.R. § 10.33(a)(4) (1984). In addition, the practitioner must render an overall evaluation of the shelter's tax benefits and cannot render a favorable evaluation unless the practitioner concludes that "substantially more than half of the material tax benefits, ... more likely than not will be realized if challenged by the Internal Revenue Service." 31 C.F.R. § 10.33(a)(5) (1984). An attorney may be disbarred or suspended from practice before the Internal Revenue Service for violating any part of Section 10.33 if such violation is "willful, reckless or through gross incompetence ... or if the violation is part of a pattern of providing tax shelter opinions that fail to comply with § 10.33." 31 C.F.R. § 10.52(b) (1984).

Plaintiff contends that the regulations at issue restrict his freedom of speech by limiting his ability to give legal advice and legal opinions regarding taxation. Plaintiff argues that the regulations unduly restrict the ability of an attorney to engage in communicating advice to the public. He notes that the definition of a "tax shelter opinion" supports his contention that the regulations restrict an attorney's ability to speak to the public at large. That definition is contained in 10.33(c)(3) and states that a tax shelter opinion is:

advice by a practitioner concerning the Federal tax aspects of a tax shelter either appearing or referred to in the offering materials, or used or referred to in connection with sales promotion efforts, and *directed to persons other than the client who engaged the practitioner to give the advice.* (Emphasis added).

Defendants maintain that the regulations do not prohibit or penalize speech as the plaintiff contends, but rather set forth the positive duties required of practitioners in rendering tax shelter opinions. The defendants further assert that the regulations are needed to ensure that practitioners are honest and that any advice they render will not be deceptive or misleading. Because an attorney's advice regarding a tax shelter is commercial speech, the defendants claim it can be regulated insofar as that speech is false, deceptive, or misleading.

### Discussion

A preliminary question must be resolved before the constitutional challenges can be addressed. Defendants challenge this court's jurisdiction over this matter, contending that 28 U.S.C. § 2201, the Declaratory Judgment Act, precludes subject matter jurisdiction.

Section 2201 provides:

In a case of actual controversy within its jurisdiction, *except with respect to Federal Taxes* ..., any court of the United States, upon the filing of an appropriate pleading may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. (Emphasis added).

The defendants argue that because plaintiff is seeking declaratory relief and because the regulation at issue involves tax matters, this court is without subject matter jurisdiction.

It is true that the broad language of the Declaratory Judgment Act does except a large body of law from the court's jurisdiction. *See Voss v. United States,* 573 F.Supp. 957, 959 fn. 2 (D.Colo.1983);

*Bob Jones University v. Simon,* 416 U.S. 725, 733 n. 7, 94 S.Ct. 2038, 2044 n. 7, 40 L.Ed.2d 496 (1974). Nonetheless, that language bars only declaratory relief sought "for the purpose of restraining the assessment or collection of any tax." *Church of Scientology v. Egger,* 539 F.Supp. 491, 494 (D.D.C.1982). The purpose of the tax exemption language is to prevent disruptions in the federal revenue process, *Voss,* 573 F.Supp. at 959, not to limit judicial review of matter solely because it is somehow related to taxes. No disruption in the revenue process will occur here. Neither the amount of tax which the government will collect nor the method and manner by which the government will collect it will be affected by this action. *See Marcello v. Regan,* 574 F.Supp. 586, 594 (D.R.I.1983). Furthermore, it is the responsibility of the court to examine legislation and agency-promulgated regulations to ensure their conformity with the Constitution. Accordingly, this court has subject matter jurisdiction to consider plaintiff's constitutional challenge.

The court turns to the constitutionality of 31 C.F.R. §§ 10.33 and 10.52 (1984). The Department of the Treasury promulgated the regulations because it was concerned about the proliferation of abusive tax shelters and the role of the IRS practitioner's opinion in the promotion of such shelters. 49 Fed.Reg. 6719 (1984). The regulations adopted the general guidelines set forth in an American Bar Association opinion, Formal Opinion 346, issued in 1982 (hereinafter "ABA opinion"). The ABA opinion was issued in order to "articulate ethical standards applicable to a lawyer who issues an opinion which the lawyer knows will be included among the tax shelter offering materials and relied upon by offerees." ABA opinion at 1–2. The Department of Treasury regulations are thus clearly aimed at governing the conduct of professional practitioners.

The Supreme Court has long recognized that the state may require that a person comply with conditions imposed "for the protection of society" before he can practice his profession. *Dent v. West Virginia,* 129 U.S. 114, 121–22, 9 S.Ct. 231,

233, 32 L.Ed. 623 (1889). Moreover, the government may impose regulations on professionals even if their incidental effect is to abridge freedom of speech. *See Giboney v. Empire Storage & Ice Co.,* 336 U.S. 490, 502, 69 S.Ct. 684, 690, 93 L.Ed. 834 (1949).

A recent United States Supreme Court case provides guidance in determining the line between legitimate regulation of a profession and impermissible prohibitions on speech. In *Lowe v. Securities and Exchange Commn.,* —— U.S. ——, 105 S.Ct. 2557, 86 L.Ed.2d 130 (1985), the Court ruled that the Securities and Exchange Commission (hereinafter referred to as "SEC") can not regulate investment newsletters that are published independently of brokerage firms. The SEC had revoked Mr. Lowe's registration as an investment advisor after he had been convicted of illegal practices. Because he wasn't registered under the Investment Advisers Act of 1940, the SEC contended that Mr. Lowe could not publish newsletters containing investment advice. The SEC contended that the prohibition against publishing by Lowe was necessary in order to protect the public against fraudulent practices and could be justified as a means of regulating a profession. The majority of the Court avoided the constitutional challenges raised by Lowe and held that Lowe's newsletters fell within an exception to the law's registration requirements and therefore precluded the SEC from regulating it.

The concurrence, however, rested its decision on first amendment grounds. The reasoning of the concurrence is particularly pertinent to the issue at hand as it discusses at length the potential for "collision between the power of government to license and regulate those who would pursue a profession or vocation and the right of freedom of speech and of the press guaranteed by the First Amendment." *Lowe,* —— U.S. at ——, 105 S.Ct. at 2575 (White, J. concurring).

The court delineates the line between permissible and impermissible regulations in the following way:

One who takes the affairs of a client personally in hand and purports to exercise judgment on behalf of the client in the light of the client's individual needs and circumstances is properly viewed as engaging in the practice of a profession. Just as offer and acceptance are communications incidental to the regulable transaction called a contract, the professional's speech is incidental to the conduct of the profession. If the government enacts generally applicable licensing provisions limiting the class of persons who may practice the profession, it cannot be said to have enacted a limitation on freedom of speech or the press subject to First Amendment scrutiny. Where the personal nexus between professional and client does not exist, a speaker does not purport to be exercising judgment on behalf of any particular individual with whose circumstances he is directly acquainted, government regulation ceases to function as legitimate regulation of professional practice with only incidental impact on speech; it becomes regulation of speaking or publishing as such, subject to the First Amendment's command that "Congress shall make no law ... abridging the freedom of speech or of the press."

*Lowe,* —— U.S. at ——, 105 S.Ct. at 2584–85 (White, J. concurring).

■ This court adopts these guidelines as it considers the nature of an attorney's judgment rendered in a tax shelter opinion. As the plaintiff has noted, the tax shelter opinion is directed at members of the public, not at the attorney's client. Nonetheless, a "personal nexus" exists between the attorney and the client for whom his professional judgment is sought. The attorney is charged with making factual determinations about a tax scheme. In order to do so the attorney must develop a personal relationship with his client. The tax shelter opinion purports to be the judgment of a practitioner exercised on behalf of a particular individual or corporation with whom he is directly acquainted. An attorney does not issue the opinion as a means of sharing his individual ideas. Based on these observations, the court finds the reg-

ulations contained in Sections 10.33 and 10.52 are not abridgements of constitutionally protected speech but are regulations governing the standard of practice of professionals.

■ Even if the rendering of tax shelter opinions could be considered speech, the regulations at issue would satisfy the constitutional guidelines for commercial speech. The regulations restrict false or misleading commercial speech. *Central Hudson Gas & Electric Corp. v. Public Service Comm'n,* 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980); *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 771–72, 96 S.Ct. 1817, 1830–31, 48 L.Ed.2d 346 (1976).

■ Plaintiff also argues that various words of the regulation are unconstitutionally vague. In particular, the plaintiff alleges that the requirement of Section 10.33(a)(ii) is subjective and can be abused by the IRS. That section requires that a "practitioner may not accept as true asserted facts ... which he/she should not, based on his/her background and knowledge, reasonably believe to be true." The court disagrees with plaintiff's contention. The regulation gives notice to a practitioner that he is expected to make a judgment that is reflective of his background and knowledge. There is no constitutional impairment in that.

Accordingly,

IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is denied.

2. Defendants' motion for summary judgment is granted.

Defendants' attorney shall prepare a final order and judgment in accordance with this opinion within twenty days.