# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-3487
_____

United States of America,

*Plaintiff - Appellee*,

v.

Dennis Sryniawski,

*Defendant - Appellant.*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: May 13, 2022
Filed: September 2, 2022
_____

Before SMITH, Chief Judge, COLLOTON and SHEPHERD, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Dennis Sryniawski was charged with federal offenses of cyberstalking and extortion after he sent a series of e-mails to a candidate for the Nebraska legislature. A jury acquitted Sryniawski of extortion but convicted him of cyberstalking, in violation of 18 U.S.C. § 2261A(2)(B). Sryniawski appeals the conviction, arguing that the e-mails constituted speech that is protected by the First Amendment, and that

the evidence was insufficient to support a conviction. We conclude that the evidence was insufficient under a proper interpretation of the cyberstalking statute, and therefore reverse the conviction.

## I.

Jeff Parris ran for the Nebraska legislature in 2018. At the time of the campaign, Parris was married to Diane Parris and was the step-father of Diane's adult daughter from a previous marriage. Jeff and Diane married in 1992, divorced in 1994, and then remarried in 2007. Between the two marriages, Diane was married to Dennis Sryniawski from 1994 to 1995.

In October 2018, during the legislative campaign, Sryniawski sent an e-mail to Parris's official campaign e-mail address from the name "Isaac Freely." The subject line of the e-mail was "Check your skeletons?" The e-mail called Parris's step-daughter a pedophile, and hyperlinked to two websites showing that she had been charged with online solicitation of a minor and sexual assault of a minor in Texas. The e-mail included a hyperlink to the step-daughter's sexually explicit weblog, and asserted that the step-daughter's "'Pansexuality' does not recognize age either." Sryniawski also implied that he might report the step-daughter for fraudulently crowdfunding tickets to see a concert. The message was signed "Until next time, Exposing the Hypocrites!"

The e-mail message also referred to Diane Parris's relationship with her father. When Diane and Sryniawski were married, Diane told him that her father had molested her, and that she took prescription medication to address her emotional condition. Referring to Diane's disclosures about her father's conduct, the e-mail said: "Which did he really? Or was the Multiple Personality Disorder all a hoax to be a Pharm Addict?" The e-mail warned that "this is only just the beginning," and that there was "[m]ore to come," especially because Jeff and Diane had a "dozen" ex-

spouses between them who did not want to see Jeff in politics. The e-mail concluded with a "suggestion" that Jeff should "bow out of the race."

Two days later, over a period of eight hours, Sryniawski sent five more e-mails to the Parris campaign address. The first of these, the second e-mail overall, bore the subject line "Gone But Not Forgotten." Sryniawski again sent this message from the name "Isaac Freely," and signed "Sincerely, Exposing the Hypocrisy" at the bottom. The e-mail attached a screen shot of a comment that Sryniawski had posted on the Parris campaign Facebook page under the name "Nicole Jacobs." The comment contained one of the same hyperlinks that Sryniawski sent in the first e-mail about the step-daughter's arrest for sexual assault and online solicitation of a minor. The body of the e-mail said that "the Ghosts will continue to haunt you," and included a statement as follows: "All we are asking, is Quit the Race. Step down from running for State Legislature, Never run for any Political Office again, & All will be Sweet, especially for the 'Good Life'."

The third e-mail was from "Dennis Sryniawski" with the subject line, "Good Day?" The entire text of the e-mail read, "I so see the resemblance in Mother and Daughter!" The e-mail contained four broken-image thumbnails, but no images.

Sryniawski sent the fourth e-mail under the name "Joe Poluka." Like the third e-mail, it bore the subject line "Good Day?" and contained the text, "I so see the resemblance in Mother and Daughter!" The fourth e-mail included four photographs as attachments. The first showed Diane Parris campaigning, and the second showed Parris's step-daughter wearing a camisole. The third photo purportedly depicted the step-daughter performing oral sex on a male, and the fourth photo depicted Diane Parris performing oral sex on a male.

Sryniawski sent the fifth e-mail as a reply to the fourth e-mail using the pseudonym "C Payne," who is an ex-husband of Diane. The body of the e-mail said

only, "Do We Have Your Attention Now?" Sryniawski sent the sixth and final e-mail as a reply to the preceding two e-mails using the step-daughter's name as the sender. The text read: "Are we not entertained?"

Jeff Parris shared the e-mails with his family. Jeff testified that the e-mails hurt him and his family "immensely," and that the photographs were "devastating." His step-daughter described the e-mails as "jarring," "unsettling," and "messed up." When Diane saw the e-mails, she became "very emotional" and was "obviously upset." Diane was also "horrified" and "afraid," because she inferred that Sryniawski must be the sender. Sryniawski was one of only a few people to whom Diane had disclosed the abuse that she suffered as a child, her diagnosis with a psychological condition, and her use of medication for that condition. Diane testified that after seeing the e-mails, she became frightened for her safety.

The day after receiving the sixth e-mail, Jeff Parris reported the messages to the La Vista Police Department. A local investigator and an FBI agent contacted Sryniawski at his workplace the same day. Sryniawski initially denied sending the e-mails, but soon admitted that he sent all of them.

A grand jury charged Sryniawski with cyberstalking, in violation of 18 U.S.C. § 2261A(2)(B), and extortion, in violation of 18 U.S.C. § 875(d). The case proceeded to trial. At the close of the government's case and at the close of all evidence, Sryniawski moved for judgment of acquittal. He argued that the evidence was insufficient to support a conviction, and that the cyberstalking and extortion statutes violated the First Amendment as applied to him. The district court denied the motions. The jury was instructed that speech is not protected by the First Amendment "if it is intended to harass or intimidate and would be reasonably expected to cause emotional distress," but the terms "harass" and "intimidate" were not further defined.

The jury convicted Sryniawski of cyberstalking but acquitted him of extortion. The district court imposed a sentence of one year and one day in prison, followed by three years of supervised release, and a $10,000 fine. Sryniawski appeals the conviction.

## II.

Sryniawski contends that the cyberstalking statute, as applied to him, violates his right to freedom of speech under the First Amendment. He also contends that evidence was insufficient to sustain a conviction under the statute. In this case, Sryniawski's challenges merge into a single question: whether the evidence was sufficient to convict Sryniawski of cyberstalking under § 2261A(2)(B) when the statute is interpreted in a way that is consonant with the First Amendment.

A defendant is guilty of cyberstalking if he (1) "with the intent to . . . harass [or] intimidate," (2) uses "any . . . electronic communication system of interstate commerce . . . to engage in a course of conduct," that (3) "causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to" the victim or his immediate family. 18 U.S.C. § 2261A(2)(B).

The *mens rea* element, as charged in this case, requires that a defendant act with the intent to "harass" or "intimidate." *Id.* § 2261A(2). If these terms are construed in their broadest sense, however, they would infringe on rights protected by the First Amendment. Broadly defined, "harass" can mean simply "to vex, trouble, or annoy continually or chronically." *Webster's Third New International Dictionary of the English Language Unabridged* 1031 (1993). "Intimidate" can mean "to make timid or fearful." *Webster's Third New International Dictionary of the English Language Unabridged* 1184 (2002).

Even where emotional distress is reasonably expected to result, the First Amendment prohibits Congress from punishing political speech intended to harass or intimidate in the broad senses of those words. The Free Speech Clause protects a variety of speech that is intended to trouble or annoy, or to make another timid or fearful. In *Snyder v. Phelps*, 562 U.S. 443 (2011), for example, the Supreme Court held that protestors at a serviceman's funeral had the right to display signs that read, "Thank God for Dead Soldiers," "God Hates Fags," and "You're Going to Hell." *Id.* at 448, 461. In *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992), the Court declared unconstitutional a criminal ordinance that prohibited the display of burning crosses, Nazi swastikas, and other symbols that the perpetrator had reasonable grounds to know would arouse "anger, alarm or resentment in others on the basis of race, color, creed, religion or gender." *Id.* at 380, 391. *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988), held that the First Amendment protected a parody that depicted a prominent minister having drunken sex with his mother. *Id*. at 47-48, 50; *see also Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 204 (3d Cir. 2001) (Alito, J.) ("There is no categorical 'harassment exception' to the First Amendment's free speech clause."). For this reason, the cyberstalking statute cannot be applied constitutionally to a defendant who directs speech on a matter of public concern to a political candidate with intent merely to trouble or annoy the candidate. *United States v. Yung*, 37 F.4th 70, 78-79 (3d Cir. 2022); *United States v. Ackell*, 907 F.3d 67, 76 (1st Cir. 2018).

To sustain the conviction in this case, therefore, the government must identify sufficient evidence for a jury to find that Sryniawski acted with intent to "harass" or "intimidate" in a sense that is not protected under the First Amendment. For example, "criminal harassment" is unprotected where it "constitutes true threats or speech that is integral to proscribable criminal conduct." *Ackell*, 907 F.3d at 76; *see United States v. Stevens*, 559 U.S. 460, 468 (2010). "Intimidation in the constitutionally proscribable sense of the word is a type of true threat," where the speaker intends to place the victim "in fear of bodily harm or death." *Virginia v. Black*, 538 U.S. 343,

360 (2003). The government does not maintain that Sryniawski's e-mails contained a true threat against Parris or his family, but suggests three categories of harassing speech that are unprotected: speech integral to criminal conduct, defamatory speech, and obscenity.

First, the government argues that Sryniawski's e-mails were integral to the criminal conduct of cyberstalking itself. That argument is circular and unpersuasive. Congress may not define speech as a crime, and then render the speech unprotected by the First Amendment merely because it is integral to speech that Congress has criminalized. To qualify as speech integral to criminal conduct, the speech must be integral to conduct that constitutes another offense that does not involve protected speech, such as antitrust conspiracy, *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949), extortion, *United States v. Petrovic*, 701 F.3d 849, 855 (8th Cir. 2012), or in-person harassment, *United States v. Osinger*, 753 F.3d 939, 941, 947 (9th Cir. 2014). The government points out that we upheld a cyberstalking conviction where the evidence was sufficient to support a finding that the defendant's speech was integral to an extortion that was not charged as a separate offense. *United States v. Hobgood*, 868 F.3d 744, 747-48 (8th Cir. 2017). In this case, however, the jury acquitted Sryniawski of extortion, and there is no other identified criminal conduct to which the jury could have found that Sryniawski's e-mail communications were integral.

Second, the government contends that Sryniawski's first e-mail contained three defamatory statements that are not protected by the First Amendment. The government asserts that Sryniawaski communicated "false accusations" that Parris's wife had falsely reported childhood molestation and a psychological condition, that Parris's wife was addicted to prescription medication, and that Parris's step-daughter was a pedophile. The government did not advance this theory at trial, and there is no jury finding on defamation. The government's argument on appeal is limited to one

paragraph. But considering the defamation theory on the assumption that we may affirm on any ground supported by the record, we believe the evidence is insufficient.

Under prevailing law, where an alleged victim of defamation is a public figure, a speaker's assertions are unprotected speech only if the speaker acted with "actual malice"—that is, with knowledge that his statements were false or with reckless disregard of their falsity. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). Diane Parris was actively involved in Jeff's campaign, and served as campaign manager for a time. Spouses of candidates for public office who are actively involved in the campaign have been considered public figures. *E.g.*, *Krueger v. Austad*, 545 N.W.2d 205, 212 (S.D. 1996); *Burns v. Times Argus Ass'n*, 430 A.2d 773, 775 (Vt. 1981); *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974). The government does not dispute that Diane was a public figure or argue that Sryniawski acted with actual malice. Without a showing of actual malice, an allegedly false assertion alone is insufficient to make Sryniawski's comments about Diane defamatory.

The government argues briefly that Sryniawski defamed Parris's step-daughter, a non-public figure, by negligently asserting that she was a pedophile—*i.e.*, a person "sexually attracted to children." *The New Oxford American Dictionary* 1261 (2001). But the case was not tried on a defamation theory, and the record does not establish that Sryniawski's alleged statement was false. It was a matter of public record that the step-daughter had been charged in a criminal case with sexual assault and online solicitation of a minor. The step-daughter referred to those charges as "false allegations," and testified that they were "dismissed for lack of evidence." But the government did not present evidence that Sryniawski knew that the charges had been dismissed. Nor did the prosecution ask the step-daughter to deny that she is sexually attracted to minors, independent of whether she was guilty of making an online solicitation. On this record, therefore, the evidence is insufficient to support a finding

that Sryniawski harassed Parris and his family with defamatory speech. *Cf. United States v. Gonzalez*, 905 F.3d 165, 178 (3d Cir. 2018).

Third, the government contends that a reasonable jury could have found that Sryniawski intended to harass the victims by causing them distress through the transmission of obscene materials. The government also did not advance this theory at trial, and the jury was not asked to determine whether the attachments to Sryniawski's fourth e-mail were legally obscene under the standard of *Miller v. California*, 413 U.S. 15 (1973). But even considering obscenity on the assumption that this unspoken theory could support the verdict, the transmission of explicit photographs attached to one e-mail is not sufficient to sustain the conviction. The cyberstalking statute as charged here requires proof that a defendant engaged in a "course of conduct" that consists of "2 or more acts, evidencing a continuity of purpose." 18 U.S.C. §§ 2261A(2), 2266(2). The transmission of one e-mail with obscene attachments is not a course of conduct. Lawful acts like logging onto a computer, opening an internet browser, and sending other e-mails cannot be aggregated with criminal conduct to establish a "course of conduct." Each "act" must be taken with the requisite criminal intent and reasonable expectation of causing substantial emotional distress. *Id.* § 2261A(2)(B). The government did not charge Sryniawski with the separate offense of transmitting of obscene materials via the internet, *see id.* § 1462, and its belated obscenity theory is insufficient to sustain the cyberstalking conviction.

For these reasons, we conclude that the evidence is insufficient to support the conviction, and the judgment of the district court is reversed.

_____