# BOARD OF EDUCATION, ETC.,
## v.
# FRANK HELSTON, WHO SUES BY, ETC.

*Schools—*Mandamus*—Pupil—Suspension of—Reinstatement—Deportment—Correction of Confessed Error by Amendment after Appeal—Costs.*

1. Upon a judgment awarding a writ of *mandamus* to compel a board of education to reinstate a pupil in a public school, it is *held*: That the granting of costs against the board, with the award of execution therefor, was error. and that, although such error was corrected by amendment in the court below, after the record had been brought here on appeal, yet the costs of the appeal must go against the appellee.

2. The suspension of a pupil until he shall comply with the requirements of the board can not be construed to extend beyond the current school year.

Board of Education v. Helston.

3.  One who is improperly excluded from the common schools sustains an injury which the law will redress, but the enjoyment of the rights thus furnished by the State at public expense is necessarily conditioned upon that degree of good conduct on the part of each, which is indispensable to the comfort and progress of others.

4.  It is within the discretion of the board to require a pupil to inform the board of the name, given to him by another pupil, of a party who had been guilty of a gross breach of rules, and, upon his refusal, to suspend him.

5.  By gross profanity and vulgarity to the board, the pupil forfeits his right, if any, to reinstatement.

[Opinion filed February 14, 1890.]

APPEAL from the Circuit Court of Montgomery County; the Hon. J. J. PHILLIPS, Judge, presiding.

Mr. EDWARD LANE, for appellants.

It will not be disputed by any one that the board of education have ample power to make all necessary and reasonable rules and regulations for the government of schools under their charge. What are reasonable rules is a question of law. Thompson v. Beaver, 63 Ill. 353.

The request of the superintendent of the school and committee in this case was reasonable, and after they had exhausted all reasonable means to induce the plaintiff to give the name of the boy in question, they had the right to suspend him from the school until he would comply with the request, and simply by complying with the request he was at liberty to return to the school at any time. Spiller v. Inhabitants of Woburn, 12 Allen, 127; Hodgkins v. Institute of Rockford, 105 Mass. 475; Russell v. Inhabitants of Lynnfield, 116 Mass. 365; State v. Webber, 108 Ind. 31; Gertich v. Michener, 111 Ind. 472; Ferriter v. Tyler, 48 Vt. 444; State v. Burton, 45 Wis. 150; Donahoe v. Richards, 38 Me. 379; Guerency v. Pitkin, 32 Vt. 324; Lander v. Seaner, 76 Am. Dec. 156; State v. Pendergrass, 31 Am. Dec. 416; Sewell v. Board of Education, 29 Ohio St. 89; Burdick v. Babcock, 31 Ia. 562; Stephenson v. Hall, 14 Bar. 222; King v. Jefferson, etc., 71 Mo. 628; Bateman, Com. School Dec. 207; 18 Am. Law Reg. 533; 20 Am. Law Reg. 794; 3 Central Law J. 700; 21 Central Law J. 26.

Boards of education are held by the courts to be *quasi* judicial, and their decision is final, unless it appears that they acted from malice or ill-will. If they exercise their powers in good faith their decisions will not be reversed by the court. Hodgkins v. Rockford, 105 Mass. 475; State v. Barton, 45 Wis. 150; Graves v. Inspectors, 20 Ill. 541; McCormick v. Burt, 95 Ill. 265.

The board has discretionary powers in regard to making needful rules for the government of the school, and *mandamus* will not compel them to act differently. Will County v. The People, 110 Ill. 511; The People v. Commissioners, 118 Ill. 239; The People v. Hyde Park, 117 Ill. 462; People v. McCormick, 106 Ill. 184.

It is only when discretion is abused that *mandamus* will lie. The gentlemen composing this board being men of common sense, learning and ability, with a full knowledge of all the facts, without malice or ill-will, did what they thought was for the best interest of this pupil as well as the whole school, and I respectfully submit, if their acts do not counterview any known principle of law, the court will accept the judgment of the matter "as the general judgment of reasonable men," and permit them to govern this school in harmony with such reason.

Messrs. GEORGE PEPPERDINE and JAMES M. TRUITT, for appellee.

In *mandamus* proceedings malice or ill-will do not have to be proved. This is a proceeding for a *mandamus* to compel appellant to admit appellee to the schools of the district. By this proceeding the court is asked to review appellant's treatment of the boy, and if appellant is wrong, order the boy to be restored to school.

Where it is sought to hold the members of the board individually liable in damages, then malice must be averred and proved. But in the case at bar appellee only asks the judgment of the court on the reasonableness of appellant's conduct, and he is entitled to that judgment without any presumption being indulged by the court for or against appellant.

The distinction we insist on is clearly laid down in the case of Dritt v. Snodgrass, 66 Mo. 286.

The case of Murphy v. The Board of Directors, 30 Iowa, 430, was a similar proceeding to the case at bar. But our own court has passed satisfactorily upon the question. Trustees of Schools v. The People ex rel., 87 Ill. 303; The People ex rel. v. Board of Education, 127 Ill. 613; The People ex rel. v. Board of Education, 101 Ill. 308, Judge Walker's dissenting opinion, on page 321.

We concede that ordinarily the courts will refuse to direct how a discretionary act shall be performed, but will only compel the body to act. But we are satisfied that the proceedings of appellant can not be sustained by that proposition. In the cases of the Trustees of Schools v. The People ex rel., 87 Ill. 303, and The People ex rel. v. Board of Education, 127 Ill. 613, our Supreme Court sustained *mandamus* proceedings and passed upon the action of the school officers without being troubled about the discretionary power of such officers to act. If such officers act right, the courts will sustain them; but if they act wrong, the courts will, notwithstanding their supposed discretionary power, correct the wrong.

It was never intended to make them the absolute judges of the lawfulness of their proceedings. Ferriter v. Tyler, 48 Vt. 412; Cotton v. Reed, 20 Ill. 607; State v. Board of Education, 63 Wis. 234; S. C., 53 Am. Reps. 282; State v. White, 82 Ind. 278; Murphy v. The Board of Directors, 30 Iowa, 430; S. C., 27 Am. Reps. 348; Dritt v. Snodgrass, 66 Mo. 286; Morley v. Power, 12 Central Law Journal, 510.

WALL, J.   This was a proceeding by *mandamus* to compel the Board of Education of District No. 1, T. 8, etc., to restore the relator to the privileges of a pupil in the public school of said district.

A demurrer was sustained to the amended answer, and there was judgment for a peremptory writ as prayed, with costs, and an award of execution therefor. The record having been brought here by appeal of the board, the appellee moved the court below to amend the judgment by striking out the award of execution for cost which, as appears by the additional record

now filed, was done. Thus a confessed error has been corrected, but the cost of the appeal must fall upon the appellee as the judgment would necessarily have been reversed because of such error. Shiply v. Spencer, 40 Ill. 107 ; Seely v. Pelton, 63 Ill. 105.

It appears from the record that the relator was suspended from the school November 9, 1888, until he would comply with the requirements of the board. This suspension would not be construed to continue beyond the school year then current, and as that year has now expired the relator presumably is not now debarred of school privileges. The only point having legal significance remaining in the record is as to the costs in the court below which were adjudged against the board. To determine the propriety of that judgment it will be necessary to consider the facts presented by the pleadings.

The petition avers that the relator is fourteen years of age and a resident of said district, and had been in attendance as a pupil in the school ; that on the 9th of November, 1888, he was illegally suspended because he had refused to give to the superintendent the name of another pupil whom he (relator) thought was guilty of defacing the school building by obscene writing thereon. The answer admits the relator was a pupil and that he was suspended, alleges that some obscene writing (setting it out) very gross and in such large letters as to be legible across the street was found upon the building, and that relator was asked, as were other pupils, what he knew about it, and that he told the superintendent and the school committee that another boy had given him the name of the boy who did it, but he refused to give the name of the boy, for which disobedience he has been suspended until he would give the name, or say that the name had not been given to him, which suspension was by the board approved. That afterward, in February, 1889, the relator appeared before the board, and still persisting in his refusal to tell what he knew, though modifying somewhat, but not materially, his former statement as to the nature of the information he possessed, he was requested by the board to ask his mother to come there so that the board might confer with her about the matter, which he in very

insolent terms refused to do, and then applied the most profane and obscene epithets to the board and went away. The expressions used by him on that occasion are set out in the answer, but on account of their indecency are omitted here.

It is true, as suggested by counsel in argument, that the common schools are provided and maintained by taxation, that their benefits are rightly to be enjoyed by all, and that one who is improperly excluded sustains an injury which the law will redress. But the enjoyment of the right thus furnished by the State at public expense is necessarily conditioned upon that degree of good conduct on the part of each which is indispensable to the comfort and progress of others.

As in all other forms of social life, the individual must surrender a certain measure of his natural independence and must submit to be governed by those rules which have been found necessary; and very much as in the family, there is absolute necessity for strict obedience to all reasonable requirements of those who are in authority. The ordinary laws of decency and propriety in conduct and in speech can not be disregarded, and when broken there must be prompt and effective punishment, otherwise the great objects of the school will fail of accomplishment. It need not be argued that the defacement of a public school building by obscene writing thereon is an intolerable offense and that the most radical measures should be resorted to, if necessary, to prevent a repetition of it. It is the duty of all good citizens to uphold the officers of the law and when called upon by a grand jury every man may be required to state upon oath what he may know as to the perpetration of any crime or misdemeanor, though he is, of course not bound to criminate himself.

So here every pupil, when called upon by the superintendent or by the board, should, as a matter of duty and loyalty to what is essential for the common welfare, freely state anything within his knowledge not self-criminating, that will assist in bringing the offender to justice and thereby tend to the repression of all such offenses.

If he refuses to do this he is guilty of disobedience, for which reasonable punishment may be inflicted. By the pro-

visions of the school law, Secs. 49, 83, the board may suspend or expel a pupil for "gross disobedience or misconduct."

We shall not discuss the question whether the decision of the board in such a case is so far judicial in its nature and so much within their discretion as not to be the subject of review in legal proceedings, but shall assume that the law may and will, in proper cases, set aside such decisions and grant appropriate relief where manifest wrong and injustice appear. It is to be conceded, however, that the case must be clear, and that much must be presumed in favor of the action of the board and much should be left to their discretion. The duty of a school teacher and of school directors is to a great extent parental, and in the administration of their power they must be guided by wise judgment. Many circumstances and considerations not easily stated on paper, may properly influence their action. Insubordination in a large public school is dangerous in the extreme. Firmness and decision may often be essential to good order, and the timely and prompt correction of a few turbulent spirits may be absolutely necessary to prevent the further spread of misrule. When done in good faith such acts should receive very favorable consideration in the courts.

In this case, upon the facts disclosed by the answer, the board was clearly warranted in suspending the relator. He was guilty of gross disobedience in refusing to furnish what information he had when called on for that purpose. For such refusal of a witness to testify before a grand jury or upon a trial he may be fined and imprisoned.

By his misconduct, when before the board in February, the relator forfeited all rights to reinstatement until suitable reparation therefor was tendered.

It would be unwise and unreasonable to open the door of the court to one so forgetful of duty and so wanting in the respect due from a youth to his superiors in age and authority. Here is a boy of fourteen who has defied the proper command of his school superintendent and who has been guilty of an outrageous breach of decorum toward the board, who were for the time being his judges, asking the law

to reinstate him as a pupil.   If he could succeed under those circumstances, the power of the superintendent and the board would justly be regarded as very insignificant and the influence of the example would be exceedingly unfortunate.

The extraordinary remedy by *mandamus*, which is to be invoked only in clear cases, and which is dependent upon a sound judicial discretion, should not be granted upon the facts set forth in the pleadings.   It was error to sustain the demurrer to the amended answer.   The judgment will be reversed and the cause remanded.

*Reversed and remanded.*