Raymond SCOVILLE, a minor, and Merrill Scoville, as father and next friend; Arthur Breen, a minor, and Jerry Breen, as father and next friend, Plaintiffs,

v.

BOARD OF EDUCATION OF JOLIET TOWNSHIP HIGH SCHOOL DISTRICT 204, COUNTY OF WILL, STATE OF ILLINOIS: Arthur L. Bruning, David R. Ross, Howard Johnson and Clayton Wintersteen, Defendants.

No. 68 C 717.

United States District Court
N. D. Illinois, E. D.
July 19, 1968.

Paul M. Lurie, Fohrman & Lurie, Chicago, Ill., for plaintiffs.

Richard T. Buck, McKeown, McKeown & Fitzgerald, Joliet, Ill., for defendants.

## OPINION

NAPOLI, District Judge.

On January 15, 1968, minor plaintiffs Raymond Scoville and Arthur Breen, 17 year old students at Joliet Central High School, distributed 60 copies of a 14 page mimeographed "literary journal", entitled "Grass High", to other students and faculty members at Joliet Central High School. A copy of "Grass High" attached as an exhibit to the complaint shows that it contained various editorials, poetry, motion picture and record album reviews, and miscellaneous anecdotes. One prominent editorial, entitled "My Reply," read in part:

> * * * The pamphlet started with a message from the principal, David Ross. This is logical because the entire pamphlet is supposed to be "The Principal's Report to Parents." In this article Ross states why the pamphlet was put out and the purpose it is supposed to accomplish namely, the improvement of communication between parents and administration. He has got to be kidding. Surely, he realizes that a great majority of these pamphlets are thrown away by the students, and in this case that is how it should have been. I urge all students in the future to either refuse to accept or destroy upon acceptance all propaganda that Central's administration publishes * * *

The editorial went on to criticize school attendance regulations as "utterly idiotic and asinine", and concluded that "Our whole system of education with all its arbitrary rules and schedules seems dedicated to nothing but wasting time." Elsewhere, the editorial accused the senior dean of the school of having a "sick mind." It is alleged in the complaint, and must be assumed true in passing on the pending motion to dismiss, that the distribution of "Grass High" created no disturbance which did, or could have caused, any commotion or disruption of classes at Joliet Central High School.

On January 18, 1968, minor plaintiffs were instructed not to report for their final examinations for the Fall semester, 1967/1968. On January 20, 1968, minor plaintiffs were told they could no longer participate in debate team activity. On January 22, 1968, minor plaintiffs were

told that they were to be suspended for the first five days of the spring 1968 semester at Joliet Central High School. On January 31, 1968, minor plaintiff Scoville was removed as editor of the school newspaper. Thereafter, recommendations were sent to the Joliet School Board that minor plaintiffs be expelled from Joliet Central for the remainder of the term ending in June, 1968. Parents of the minor plaintiffs, including plaintiffs Merrill Scoville and Jerry Breen, were notified that expulsion of the boys would be recommended at a school board meeting on February 23, 1968; and that as parents of the boys they were invited to attend. The parents of the boys did not attend, but instead sent letters to the school board asking for clemency. At the Board meeting on February 23, a resolution was adopted, expelling minor plaintiffs from the day school at the high school for the Spring 1968 term. The Board found that the publication of "Grass High" constituted a public use of inappropriate and indecent language; a violation of established rules of the school district; a disregard of and contempt for the authorities charged with the administration of Joliet Central campus and the school district; an encouragement to disregard and disobey orders promulgated by the duly constituted authorities of the school and the school district; and an involvement of other students as parties to the preparation and distribution of "Grass High" who were in fact not parties thereto.

Thereafter, a plan was worked out whereby the boys attended night school at Joliet Central, where they were able to make up some, but not all, of the subjects they were formerly taking. They were also permitted to take their physics course, on a "probationary basis," at the day school. They were obliged to pay tuition for the night school classes.

On April 17, 1968, plaintiffs filed this action against the Joliet school authorities, seeking a declaratory judgment that the action of the school board was in violation of plaintiffs' constitutional rights; and seeking a permanent injunction against enforcement of the expulsion order. Plaintiffs contend that the expulsion order constituted a denial of the rights of the minor plaintiffs of free speech and free press; and that the expulsion order constituted an exercise of authority in excess of the power delegated to the school board by the State of Illinois.

█ Plaintiffs did not present their motion for a temporary restraining order until May 3, 1968. At various hearings on that date and thereafter, this Court has indicated its belief that some of the relief sought, in particular the request for reinstatement for the Spring semester, was moot, due to plaintiffs' delay in pressing the litigation here. Although minor plaintiffs will be readmitted to Joliet Central High School for the Autumn 1968/1969 semester, this cause is not entirely moot, since plaintiffs also pray for an injunction against defendants, to restrain them from communicating the substance of the events alleged to various colleges or employers to whom the boys may apply in the future; and for an order expunging from the records of Joliet Central High School any evidence of the occurrences alleged. Plaintiffs also seek incidental damages.

The sole authority cited by defendants for their actions here is Illinois Revised Statutes, Chapter 122, § 10–22, which provides,

§ 10–22. Powers of the Board.

The school board shall have the powers enumerated in sections 10–22.1 through 10–22.34 * * *

§ 10–22.6 Suspension or expulsion of pupils

(a) to expel pupils guilty of gross disobedience or misconduct, and no action shall lie against them for such expulsion. Expulsion shall take place only after the parents have been requested to appear at a meeting of the board to discuss their child's behavior. Such request shall be made by registered or certified mail and shall state the time, place and purpose of the meeting. The board at such meeting shall state the

reasons for dismissal and the date on which the expulsion is to become effective.

(b) To suspend or by regulation to authorize the superintendent of the district or the principal of any school to suspend pupils guilty of gross disobedience or misconduct for a period not to exceed 7 days or until the next regular meeting of the board, whichever first occurs, and no action shall lie against them for such suspension.

Presently before the Court is defendants' motion to dismiss, on the grounds that the Court lacks jurisdiction over the subject matter; that these defendants are immune from suit under Ill.Rev.Stat. Chapter 122, § 10–22.6; and that the reasonableness of defendant's actions here is apparent from the face of the complaint. In their motion defendants also ask the Court to refrain from deciding the question of whether or not defendants' actions herein were within the authority delegated to them by the State of Illinois, in order to allow the state courts to decide that question.

I. Jurisdiction over the subject matter

 Plaintiffs allege that defendants have applied a statute of the State of Illinois, Ill.Rev.Stat., Chapter 122, Section 10–22.6, in such a manner that plaintiffs were deprived of their First Amendment rights under the Constitution of the United States. The allegations of a federally guaranteed constitutional right, and the alleged deprivation of that right by defendants acting under color of state law, are sufficient to give the Court jurisdiction over the subject matter. Accordingly, judgment must be on the merits, not via dismissal for want of jurisdiction. cf. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

II. Civil Rights Act Claim

 Public school boards, as well as the states from which they draw their authority, are not immune from First Amendment limitations. Thus it has been held that compulsory flag salute laws for school children, West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628, and short voluntary nondenominational school prayers, Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962), are violative of the First Amendment prohibition against establishment of religion. Even in a special purpose public building such as a high school, speech may not be suppressed where it presents absolutely no threat to the state's legitimate interest in providing an orderly, efficient classroom atmosphere. Burnside v. Byars, 5 Cir., 363 F.2d 744 (1966). (regulation forbidding high school students from wearing "freedom buttons" held unconstitutional where there is absolutely no showing that educational activity had been interfered with.) [1] Compare Blackwell v. Issaquena County Board of Education, 5 Cir., 363 F.2d 749 (1966) (wearing of "freedom buttons" in high school may be punished, where there is evidence of commotion, boisterousness, and undermining of authority as a result of the wearing of buttons.)

 State supported public high schools are special purpose public buildings. As such, there is no constitutional objection to limiting speech therein which interferes with the purpose to which they are dedicated. Even granting that freedom of speech occupies a preferred position in the hierarchy of constitutional values, it does not follow that it may be exercised at any time, in any manner, on any state-owned property without regard to the primary use to

1. Contra: Tinker v. Des Moines Independent Community School District, 258 F.Supp. 971 (1966), affirmed by an equally divided court sitting en banc, 383 F.2d 988 (8th Cir., 1967) (School regulation forbidding the wearing of black arm bands as a protest against Viet Nam war held reasonable even in absence of showing that there is a material or substantial interference with school discipline.) However, the Supreme Court has granted certiorari, 390 U.S. 942, 88 S.Ct. 1050, 19 L.Ed.2d 1130.

which the property has been dedicated. cf. Adderly v. State of Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966). Despite the First Amendment, speech may be regulated where there is a "clear and present danger" that substantive evil will result. Schenck v. United States, 249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470 (1919). "In each case (courts) must ask whether the gravity of the 'evil', discounted by its improbability, justifies such invasion of free speech as is necessary to avoid the danger." Dennis v. United States, 341 U.S. 494, 510, 71 S.Ct. 857, 868, 95 L.Ed. 1137 (1951) (quoting Judge Hand in the lower court, United States v. Dennis, 2 Cir., 183 F.2d 201, 212.)

■ It is apparent from the face of the complaint here that the minor plaintiffs had engaged in speech on school grounds which amounted to an immediate advocacy of, and incitement to, disregard of school administrative procedures. Particularly in elementary and secondary schools, the state has a compelling interest in maintaining an atmosphere conducive to an orderly program of classroom learning, and to respect for legitimate and necessary administrative rules. "The interest of the state in maintaining an educational system is a compelling one, giving rise to a balancing of First Amendment rights with the duty of the state to further and protect the public school system." Burnside v. Byars, 5 Cir., 363 F.2d 744, 748 (1966). The speech here, unlike the speech in Burnside v. Byars, supra, and Tinker v. Des Moines Independent Community School District, supra, itself constitutes a direct and substantial threat to the successful operation of the school. Even if it were not directed to an immature audience, its suppression might be justified under the rule of Dennis v. United States, supra. Furthermore, although we are in a period when the rights of the minor vis-a-vis the state are being closely reexamined, cf. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), the Supreme Court has recently affirmed the right of the state to protect its younger citizens from certain forms of speech which would, if the audience were adult, be protected by the First Amendment. Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (April 22, 1968).

■■ Under most circumstances, responsible criticism of school administrative officials is no less protected by the First Amendment than responsible criticism of other state officials. See Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). However, where speech takes the form of immediate incitement to disregard of legitimate administrative regulations necessary to orderly maintenance of a public high school system; and where the speech occurs, not on a street or on a public park, where the rights of free speech are virtually absolute, but rather on the very property dedicated to a special public use, the education of younger citizens; and where the speech is directed to an audience which, because of its immaturity, is more likely than an adult audience to react to the detriment of the school system, then it is the opinion of this Court that the interest of the state in maintaining the school system outweighs the protection afforded the speaker by the First Amendment. Since the circumstances surrounding the dissemination of "Grass High" are set forth in the complaint itself, defendants are entitled to judgment on the pleadings as to the Civil Rights Act claim made by plaintiffs here.

### III. The State Law Claim

■ Plaintiffs' alternative contention, that the defendants acted in excess of their delegated authority is, of course, a non-federal ground in support of the same cause of action. Standing alone, this contention would not support subject matter jurisdiction in the federal courts, since diversity of citizenship is lacking here. When coupled with a genuine federal ground in support of the same cause of action, however, this alternate contention is within the pendent jurisdiction of this Court. Hurn v. Oursler,

289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933).

Exercise of pendent jurisdiction is said to be discretionary, and if the federal ground in support of a cause of action is disposed of on the pleadings, the Court in its discretion, may elect to decline further consideration of the non-federal ground. T. B. Harms v. Eliscu, 339 F.2d 823 (2d Cir., 1964). However, I will exercise my discretion in favor of deciding the non-federal ground advanced by plaintiffs in support of their cause of action here. Abstention would merely force piecemeal determination of the issues raised here, and would cause further delay in the ultimate outcome of the litigation. Resolution of this alternate issue, whether favorable or unfavorable to plaintiffs, will prevent the necessity of filing another lawsuit in the state courts.

I am persuaded that the Illinois courts have limited their judicial review of the actions of state school boards to an inquiry of whether or not the board's determination was shown to be the result of fraud, corruption, oppression or gross injustice. Smith v. Board of Education of Oak Park & River Forest Tp. High School, 182 Ill.App. 342 (1914); and that considerable latitude for discretion is left to the boards of education, Board of Education v. Helston, 32 Ill.App. 300, in making the determination of whether an act constitutes gross misconduct. I hold that the dissemination of "Grass High" under the circumstances alleged, was reasonably found by the Board to constitute "gross misconduct.", and that Illinois Revised Statutes, Chapter 122, § 10–22.6 has sufficiently delegated the authority to defendants to make such a finding.

Because the Court finds that the language quoted from the editorial entitled "My Reply" is unprotected by the First Amendment, under the circumstances alleged in the complaint, and that the minor plaintiffs may reasonably be punished for their conduct in disseminating it to students on school grounds, under the applicable Illinois statute, it will be unnecessary to consider whether certain other language in "Grass High", found to be "inappropriate and indecent" by the School Board, would, if standing alone, be entitled to First Amendment protection under the circumstances; or whether dissemination of a newspaper on high school grounds to high school students, containing only that language, would constitute "gross misconduct." It will also be unnecessary to pass upon the question of whether a state statute such as Ill.Rev.Stat., Ch. 122, § 10–22.6, can grant immunity from a federally created cause of action.

For the reasons given, defendants' motion to dismiss must be, and is hereby, allowed.