Hallie O. GRAHAM et al., Plaintiffs,

v.

The HOUSTON INDEPENDENT SCHOOL DISTRICT et al., Defendants.

Civ. A. No. 69-H-1019.

United States District Court,
S. D. Texas,
Houston Division.

Jan. 21, 1970.

David H. Berg, Houston, Tex., of counsel, Legal Div., Greater Houston Chapter of the Texas Civil Liberties Union and the American Civil Liberties Union, Houston, Tex., for plaintiffs.

Reynolds, White, Allen & Cook, Joe H. Reynolds and Grant Cook, Houston, Tex., for defendants.

INGRAHAM, Circuit Judge (Sitting by Designation).

*Memorandum:*

This action was filed pursuant to 42 U.S.C. sec. 1983 and 28 U.S.C. sec. 2201

by three students at Bellaire High School against the school principal and the superintendent and members of the board of the Houston Independent School District. The plaintiffs allege that as a result of their publishing and distributing an off-campus publication called "The Plain Brown Watermelon", they were harassed by school officials and were told to leave the school until their "attitudes changed". Contending that their rights under the first, fifth, and fourteenth amendments to the United States Constitution were violated, the plaintiffs first sought a temporary restraining order to restrain the defendants or their agents from refusing the plaintiffs permission to re-enter the school, from harassing the plaintiffs, and from imposing discipline upon them because of their activities in connection with the newspaper. The motion for the temporary restraining order was denied on October 22, 1969. By motion for preliminary injunction, the plaintiffs seek the foregoing relief, and in addition, an order enjoining the defendants from maintaining a record of the disciplinary action; from enforcing regulations designed to inhibit the production and distribution of private student newspapers in the district; and for an order requiring the return of seized newspapers. On November 13 and 14, 1969, an evidentiary hearing was conducted on the motion for preliminary injunction, which was advanced to a trial on the merits of the complaint. Counsel have filed briefs, and the case is now before the court for final adjudication. For the reasons to follow, the court finds that the plaintiffs are not entitled to the relief sought. This memorandum will constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

The basic facts in this case are for the most part undisputed. The plaintiffs began on-campus distribution of "The Plain Brown Watermelon" on October 17, 1969. On the same day they were called before high school administrators and were told to cease distributing the paper. They were informed that they were to leave the school until they did so. They were not formally expelled. They and their parents were offered an opportunity to meet with the school principal, but only two of the defendants took advantage of the hearing. The students remained intransigent, and the school principal refused to revoke his directive; the students therefore left the school and filed this suit.

The evidence adduced at the hearing in this court showed that prior to the distribution of "The Plain Brown Watermelon", the school principal, Mr. Harlan Andrews, had on two occasions announced to the student body the rule that the distribution of unauthorized material on the campus would result in disciplinary measures. One of the plaintiffs, Harrell Graham, testified that a major purpose behind distributing the paper was to flaunt that rule. The testimony of the other two witnesses was to the same effect; they knew at the time that their activities were against school policy and that they were subjecting themselves to the disciplinary measures previously announced by Mr. Andrews.

Judge Woodrow Seals of this district was recently presented with a situation similar to that in the instant case in Sullivan v. Houston Independent School District, 307 F.Supp. 1328 (S.D. Tex.1969). Judge Seals well and thoroughly enunciated the principles as they currently stand pertaining to the rights of students to register dissent on the school campus. To summarize, Judge Seals held, primarily on the basis of Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), that students do not shed their constitutional rights when they enter the high school campus; first amendment protections apply fully to high school students. Judge Seals noted, however, that "speech and assembly are subject to reasonable restrictions as to time, place, manner and duration . . . ." Sullivan v. Houston Independent School District,

supra, 307 F.Supp. at 1339. Freedom of speech may therefore be exercised on the school campus "so long as it does not unreasonably interfere with normal school activities." Id. at 1340. In Tinker, the Supreme Court stated the underlying test:

"Clearly, the prohibition of expression of one particular opinion, at least without evidence that it is necessary to avoid material and substantial interference with school work or discipline, is not constitutionally permissible."

Tinker v. Des Moines Independent Community School District, supra, 393 U.S. at 511, 89 S.Ct. at 739.

To this point, the court concurs with Judge Seals' analysis in Sullivan as to the rules pertaining to first amendment freedoms on the campus. In a proper case, the issue would now be whether the students were responsible for "material and substantial" disruption of school procedures within the meaning of Tinker. This court cannot agree, however, with the unstated conclusion that seems to logically follow from the Sullivan decision: that any activity involving speech, even when coupled with gross disobedience of school disciplinarians, must be tested against the disruption standard.

I reach this conclusion because, in this case, the evidence tends to show that these plaintiffs were reprimanded more for disobedience than for the dissemination of material protected under the first amendment. In the first instance, the students were not expelled. In effect they were told to leave their classes until they could obey the principal's directives. They were never told that they could not distribute the paper off the campus. They knew that there were reasonable and proper channels to explore in order that they might distribute the paper on campus, but they bypassed them completely. The plaintiffs testified that one purpose in distributing the paper was to flaunt the school rule prohibiting the activity in which they were engaged. Moreover, there was evidence that the distribution of the paper had caused a disturbance in certain classrooms and in the halls. Whether it was "substantial" within the Tinker standard I do not think needs answering. In connection with the other activities of the plaintiffs, the resulting disturbance was sufficient to warrant the school principal in disciplining the students.

In a case not cited by Judge Seals, Scoville v. Board of Education, 425 F.2d 10 (7 C.A.1969), the Seventh Circuit held that it was not unreasonable for students to be suspended for publishing and distributing a pamphlet which incited students to ignore school procedures and was contemptuous of school officials, even if the publication had no disruptive effect on the school. This court cannot agree with that decision, as it, erroneously, I believe, concentrates solely on the content of the publication. In discussing the district court opinion in Scoville, 286 F.Supp. 988 (N.D.Ill.1968), which was affirmed by the Seventh Circuit, Professor Charles Alan Wright said:

"The result . . . seems to me quite wrong. In the absence of a showing of *any* disruption of the work of the school or *any* disorder or *any* invasion of the rights of others— much less the 'material and substantial' interference Tinker requires—it seems to me inescapable that these two students were expelled because the school authorities did not like what they were saying, and this is what the Constitution prohibits."

C. A. Wright, The Constitution on the Campus, 22 Vand.L.Rev. 1027, 1055 (1969) (emphasis in original).

Within my analysis, and under the circumstances of this case, I do not believe it is necessary or proper to inquire into the content of this publication.

Nor, again, do I believe that substantial disruption must invariably be proved. The issue here is neither whether the paper was "insidious" as the defendants characterize it (which it was not) nor whether a Tinker-style disturbance occurred (which it did not). My views are in accord with those of District Judge Bartels as stated in a case in which he found that the plaintiff-student was properly expelled for disobeying school authorities rather than for engaging in protected speech:

"In our system of government, there is no right to suppress or censor speech or expressions even though they may be hateful or offensive to those in authority or opposed by the majority. Cox v. State of Louisiana, 379 U.S. 536, 551–552, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). It is likewise true that the freedom of speech and association protected by the First and Fourteenth Amendments are not 'absolutes' and are subject to constitutional restrictions for the protection of the social interest in government, order and morality. Konigsberg v. State Bar of California, 366 U.S. 36, 50, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961), reh. denied, 368 U.S. 869, 82 S.Ct. 21, 7 L.Ed.2d 69 (1961); Beauharnais v. People, 343 U.S. 250, 256, 72 S.Ct. 725, 96 L.Ed. 919 (1952);

Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 501, 69 S.Ct. 684, 93 L. Ed. 834 (1949). While there is a certain aura of sacredness attached to the First Amendment, nevertheless these First Amendment rights must be balanced against the duty and obligation of the state to educate students in an orderly and decent manner to protect the rights not of a few but of all the students in the school system. The line of reason must be drawn somewhere in this area of ever expanding permissibility. Gross disrespect and contempt for the officials of an educational institution may be justification not only for suspension but also for expulsion of a student."

Schwartz v. Schuker, 298 F.Supp. 238, 242 (E.D.N.Y.1969).

Although the activity for which the plaintiff in Schwartz was expelled was more flagrant than was the activity in this case, this court will not begin to intimate the extent to which a student may be disobedient before disciplinary measures are properly taken. That determination is within the province of the school administrators. It is sufficient to state that the court finds the principal's decision neither arbitrary nor unreasonable under the circumstances.*

I have stated that I do not agree that school authorities are without power to

---

* District Judge Lawrence was recently called upon to "decide the precise point at which the fuzz or down above the lips of a teenager becomes a mustache." Although clearly distinguishable from the instant case, the following quotation well expresses my thoughts about cases of this kind:

"Among the things a student is supposed to learn at school (at least, such is my idea) is a sense of discipline. Of course, rules cannot be made by authorities for the sake of making them but they should possess considerable leeway in promulgating regulations for the proper conduct of students. Courts should uphold them where there is any rational basis for the questioned rule. All that is necessary is a reasonable connection of the rule with the proper

operation of the schools. By accepting an education at public expense pupils at the elementary or high school level subject themselves to considerable discretion on the part of school authorities as to the manner in which they deport themselves. Those who run public schools should be the judges in such matters, not the courts. The quicker judges get out of the business of running schools the better. I have no intention of becoming a tonsorial or sartorial consultant of boards, superintendents and principals. Except in extreme cases the judgment of school officials should be final in applying a regulation to an individual case."

Stevenson v. Wheeler County Board of Education, 306 F.Supp. 97 (S.D.Ga.1969).

discipline students for prohibited activity simply because that activity may involve speech. I am therefore compelled to also state that Judge Seals' determination that the Houston Independent School District policy pertaining to the powers of a school principal is null and void is unpersuasive, and I do not choose to follow that portion of my brother's decision. That policy reads as follows:

"THE SCHOOL PRINCIPAL

The school principal may make such rules and regulations that may be necessary in the administration of the school and in promoting its best interests. He may enforce obedience to any reasonable and lawful command."

I conclude that the school authorities do have the power to discipline students who disregard school rules and administrative directives. It must be added that since the students knew they were violating school policy, and because they were offered a hearing before the principal, and because I do not agree that the school district rule quoted above is void, these plaintiffs were not denied due process of law.

For the foregoing reasons the court finds no basis for the relief sought by the plaintiffs, and the applications for preliminary and permanent injunction will be denied. The plaintiffs' complaint will therefore be dismissed.

■ The plaintiffs' motion to dismiss on the ground that this case was mooted by Judge Seals' decision in Sullivan, supra, will not be considered as it was not noticed for submission in accordance with Fed.R.Civ.P. 6(d), and Local Rules 24 and 25.

■ The defendants' motion to dismiss the complaint on the basis of Harkless v. Sweeny Independent School District, 300 F.Supp. 794 (S.D.Tex.1969), will be denied. The complaint in this case is sufficient to constitute suit against the named defendants in their individual capacities.