[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 6879
The defendant (hereafter "Roesch") stands accused on a substitute information of four counts of Harassment and four counts of Threatening in violation of Secs. 53-183(a)(2) and 53a-62(a)(1) of the General Statutes, respectively. A reiteration of the factual predicate for his arrest is highly appropriate at this stage of the proceeding.
Roesch was diagnosed as a paranoid schizophrenic and discharged from the Air Force as a Captain. On July 2, 1986, he was arrested and charged with Harassment and Threatening arising out of an incident involving his ex-wife and brother-in-law. As a result of that arrest, he instituted a civil action against his ex-wife, brother-in-law and Ridgefield police officer, F. Walter Schreiber, who was one of the arresting officers involved. Summary judgment was entered for the defendants and subsequently affirmed by the Second Circuit.[1] Thereafter, Roesch embarked upon a "crusade of harassment and ethnic degradation" by letters and more often post cards directed to the police officers involved in his case.
The Ridgefield police department has allegedly received over three hundred (300) items in the mail. Correspondence has also been sent to others, including former Superior Court Judge Patricia Geen, Superior Court Judge Thomas West, George Kain (Probation), the "floundering" Walter Flanagan and the "toady" Ray Dole (sic), the state's attorney and assistant state's attorney, respectively. The items mailed include post cards, comic books, toy handcuffs and badges.
Among those mailings were these: "To Officer Walter Schreiber (Dear exdetective F. Walter Schreiber, New Year Greetings to shit eating pig. Eat Shit! Pig! s/ Captain Roesch." Four post cards refer to "My Main Man The Rapper Ice-T with the hit `Kill Cops' doesn't work for Warner anymore. s/ Harry the Bomber, Bomber Roesch." Other cards addressed to Schreiber contain statements such as "You dirty filthy pig dog Nazi bastard" and "Here is S.A.C.s [strategic air command] big stick for you Commie limp dicks from a SAC trained killer — the black bird killer! Happy May Day! s/ Captain Roesch Black Bird Killer." One post card mailed from Providence, Rhode Island states, "It is Providence that a kraut head like you and a chowder head like me should meet and clash! Happy 50th Birthday Kraut Head. s/ Captain Roesch." The CT Page 6880 State alleges that the items received by Schreiber degraded his German heritage, caused great annoyance, fear and stressful anxiety that affected his job performance.
In May of 1993, the Ridgefield police department enlisted the services of the Federal Bureau of Investigation ("F.B.I.") to compare the documents they had received in the mail against known exemplars of Roesch's handwriting to determine the source of the writings. On June 25, 1993, a written report was forwarded to the Ridgefield police department by the F.B.I. that indicated a match of the handwriting characteristics on forty-seven (47) of the fifty-two (52) samples received when compared against the known samples of Roesch's handwriting. These representative specimen were utilized to demonstrate Roesch's intent to harass, threaten and annoy the members of the Ridgefield police department and, as a result, to support the issuance of the warrant.[2][3]
Roesch has filed a motion to dismiss, arguing that the two statutes impermissibly infringe on his right to free speech guaranteed by the first amendment to the United States constitution and article first, Sec. 5 of the Connecticut constitution.[4] In Addition, Roesch argues that Sec. 53a-183(a)(2) is both unconstitutionally overbroad and vague on its face. Before discussing the overbreadth and vagueness, the court must address the heavy burden that Roesch must bear to prove that these statutes are unconstitutional.
It is important at the outset to remember that the challenge to a statute on constitutional grounds always imposes a difficult burden on the challenger. The Supreme Court has consistently held that every statute is presumed to be constitutional and has required invalidity to be established beyond a reasonable doubt.Peck v. Jacquemin, 196 Conn. 53, 64; see also State v. Hernandez,204 Conn. 377, 385. Justices Holmes and Frankfurter have said that the rule is settled that as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the Act. See State v. Jacquemin,196 Conn. 53, 64, quoting United States v. Lovett, 328 U.S. 303, 329,66 S.Ct. 1073, 90 L.Ed. 1252 (1946) (Frankfurter, J., concurring). The one attacking the legislation has the burden to negative every conceivable basis which might support it. Maddenv. Kentucky, 309 U.S. 83, 88, 60 S.Ct. 406, 84 L.Ed. 590 (1940). It would seem that the challenger's burden has been adequately addressed. CT Page 6881
Roesch argues that the two statutes at issue are unconstitutional as they impermissibly infringe on his rights to free speech. In order for the first amendment to apply to Roesch's activities in this case, the statutes must have in some fashion restricted the content of his speech, not just criminalized his conduct. State v. Linares, 232 Conn. 345, 364
n. 15. Where the statute proscribes intentional conduct, not speech, the first amendment is not implicated. State v. Culmo,43 Conn. Sup. 46, 73, citing State v. Williams, 205 Conn. 456, 474. This is so because conduct is subject to regulation for the protection of society. Cantwell v. Connecticut, 310 U.S. 296,304, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). It has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed. Cox v. Louisiana, 379 U.S. 536, 555,85 S.Ct. 453, 13 L.Ed.2d 471 (1965). Such an expansive interpretation of the constitutional guaranties of speech and press would make it practically impossible ever to enforce laws and conspiracies deemed injurious to society. Giboney v. EmpireStorage Ice Co., 336 U.S. 490, 502, 69 S.Ct. 684, 93 L.Ed. 834
(1949).
The language of the harassment statute establishes a specific intent requirement. To support that charge, the State recites that Roesch in his mailings made a reference to Rapper Ice-T's rendition of "Cop Killer"; wished the officers a happy May Day, an obvious reference to the Russian Revolution; referred to the officers as "shit eating pig[s]"; and threatened them with the S.A.C. "big stick." Further, he referred to himself variously as the "Black Bird Killer," "Captain Roesch Black Bird Killer," a Strategic Air Command trained killer and stated that the officer and Roesch "should meet and clash." These statements can plainly be interpreted as both harassing and threatening communications in every day parlance. The question is, then, whether these statements made by Roesch, in the context of this case, are constitutionally protected and provide him with an immunity from prosecution based on the exercise of his rights to free speech guaranteed by the first amendment.
The Second Circuit has construed Sec. 53a-183(a)(2) in the context of a Sec. 1983 claim brought by a man who sent mail communications to the Glastonbury, Connecticut, town manager. One of the communications made by the plaintiff in that case was a CT Page 6882 newspaper clipping describing the slaying of a city mayor and members of a city council by a disgruntled resident. The article can plainly be interpreted as a threatening communication and as such is beyond the protection of the first amendment. A criminal prosecution solely in response to a threatening communication does not violate the first amendment. Mozzochi v. Borden,959 F.2d 1174, 1175 (2nd Cir. 1992).
The contents of the communications sent to the Ridgefield police by Roesch require no legal or logical miracle to be recognized as harassment and threats. While it is true that Roesch is conveying the threats by a written medium, based on the nature of Roesch's harassing and threatening conduct, Sec. 53a-183(a)(2), as applied to him, does not infringe on any protectedfirst amendment activity. It rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute. That contention is rejected. Giboney v. Empire Storage Ice Co., supra, 498.
Section 53a-183(a)(2) is valid and constitutional in its application here since it proscribes his course of intentional criminal conduct, rather than the content of any of his communications. The harassing and threatening behavior exhibited simply fails to rise to the level of speech protected by thefirst amendment. Mozzochi v. Borden supra.
The threatening statute herein relied upon also requires intentional action. The conduct here is hardly accidental, inadvertent or negligent. The statute is directed at his conduct rather than the content of the mailings and, as such, is not protected by the first amendment. Cox v. Louisiana, supra;Giboney v. Empire Storage Ice Co., supra; State v. Culmo,
supra, 73; see Mozzochi v. Borden, supra, 1175 (criminal prosecution in response to threatening behavior is not repugnant to the first amendment); see also Gormley v. Director, 632 F.2d 938,942 (2nd Cir.), cert. denied, 449 U.S. 1023, 101 S.Ct. 591,66 L.Ed.2d 485 (1980) (first amendment violation not established where speech is not a component of the statutory violation).
The court is satisfied that Secs. 53a-183(a)(2) and53a-62(a)(1) are constitutional as applied to Roesch. He has not established that beyond a reasonable doubt that they infringe on his right to free speech or expression guaranteed by thefirst amendment to the United States constitution. The statutes, as CT Page 6883 applied, serve to criminalize Roesch's intentionally harassing and threatening conduct as opposed to any protected speech or expression.
Roesch asserts that Sec. 53a-183(a)(2) is unconstitutionally overbroad on its face.[5] Prior to reaching the question of whether the statute is overbroad, however, the defendant must bear the burden of demonstrating that the first amendment even applies because to hold otherwise would be to create a rule that all conduct is presumptively expressive. State v. Culmo, supra, citing therein Clark v. Community for Creative Nonviolence,468 U.S. 288, 293 n. 5, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984).
In making this demonstration, Roesch is not limited to the application of the statute to himself. "[A]n individual whose own speech or expressive conduct may validly be prohibited or sanctioned is permitted to challenge a statute on its face because it also threatens others not before the court — those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." Brockett v. SpokaneArcades, Inc., 472 U.S. 491, 503, 105 S.Ct. 2794, 86 L.Ed.2d 394
(1985). If the law is found deficient in one of these respects, either as applied to the particular defendant or in its application to other potential defendants, it may not be applied to the particular defendant, until and unless a satisfactory limiting construction is placed on the statute. State v.Anonymous (1987-4), 34 Conn. Sup. 689, 693-94, 389 A.2d 1270
(App. Sess.), cert. denied, 174 Conn. 803, 382 A.2d 1332 (1978), denial of petition for habeas corpus aff'd sub nom. Gormley v.Director, supra.[6]
To determine whether a statute with several sub-parts can survive a facial challenge because it is claimed to be overbroad when measured against the first amendment, the court must examine those portions of the statute under which Roesch has been charged to determine whether free speech is implicated. State v. Linares,
supra, 347-48 n. 1. If one subsection of a statute facially involves protected speech, the statute implicates thefirst amendment for purposes of overbreadth analysis. State v. Bail,226 Conn. 265, 272.
The subsection of the harassment statute under which Roesch was charged utilizes the word "communicates." This section, since it includes the term "communicates," sufficiently implicates CT Page 6884 speech to require a first amendment overbreadth analysis. CompareState v. Linares, supra, 364 n. 15 (statute that contains phrase "any other act" implicates first amendment for overbreadth purposes). Therefore, the issue before the court can be succinctly stated as whether Roesch can prove beyond a reasonable doubt that Sec. 53a-183(a)(2) is unconstitutionally overbroad on its face. This question demands a negative answer.
A clear and precise enactment may nevertheless be "overbroad" if in its reach it prohibits constitutionally protected conduct.Grayned v. Rockford, 408 U.S. 104, 114, 92 S.Ct. 2294,33 L.Ed.2d 222 (1972). A single impermissible application of a statute, however, will not be sufficient to invalidate the statute on its face; rather, to be invalid, a statute must reach a substantial
amount of constitutionally protected conduct. Houston v. Hill,482 U.S. 451, 458, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). Statev. Williams, supra, 472. Consequently, a court's first task is to determine whether the enactment does indeed reach a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. Village of HoffmanEstates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494,102 S.Ct. 1186, 71 L.Ed.2d 362, reh'g denied, 456 U.S. 950,102 S.Ct. 2023, 72 L.Ed.2d 476 (1982).[7]
Section 53a-183(a)(2) requires that the subject send a communication through the mail with an intent to harass, annoy or alarm another in a manner likely to cause annoyance or alarm. Roesch argues that Sec. 53a-183(a)(2) is unconstitutionally overbroad on its face since it punishes communication intended to annoy the recipient. This standard could easily encompass protected expression of religious or political views which could not be properly regulated by the State. The State has clearly made a value judgment about certain speech it deems annoying. Roesch also argues that since there have been no court interpretations of this section to provide it with a judicial gloss, this court is free to strike it down as overbroad. This hypothetical argument fails to provide any specific examples of how this statute substantially and unnecessarily tramples on protected speech or expression.
Section 53a-183(a)(2), the portion of the statute under which Roesch was charged, deals with sending annoying material through the mail. When mail communications intrude on privacy, as where unwanted mailings are sent into an individual's home, the right to free expression or speech must be balanced against the right CT Page 6885 to privacy. In applying that balancing test, the Supreme Court held that a mailer's right to communicate must stop at the mailbox of an unreceptive addressee. The ancient concept that a man's home is his castle into which not even the king may enter has lost none of its vitality, and none of the recognized exceptions to that rule includes any right to communicate offensively with another. Rowan v. United States Post Office,397 U.S. 728, 735-37, 90 S.Ct. 1484, 25 L.Ed.2d 746 (1990), citingCamara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727,18 L.Ed.2d 930 (1967). The application of the first amendment to the vast majority of mail communications prohibited by General Statutes, Sec. 53a-183(a)(2) has been substantially tempered by the Rowan decision.
The telephone harassment portion of Sec. 53a-183 has previously been determined not to be unconstitutionally overbroad. The overbreadth principle is not violated by the unrestricted scope of the messages which the statute may ban because it is the manner and means employed to communicate them which is the subject of the prohibition rather than their content. The statute is not flawed because a recital on the telephone of the most sublime prayer with the intention and effect of harassing the listener would fall within its ban as readily as the most scurrilous epithet. The prohibition is against purposeful harassment by means of a device readily susceptible to abuse as a constant trespasser upon our privacy. That the words may be the instrument of annoyance does not insulate such wrongful conduct from criminal liability. State v.Anonymous, supra, 696.
Although there may be some extreme cases on the periphery of speech or expression that come within the sweep of the statute, no such example has been offered to the court. The activity that Sec. 53a-183(a)(2) prohibits is the intentional harassing and annoying conduct of mailing items that invade the receiver's privacy, rather than the circumscription of the content of the mailings.[8] The State can legitimately criminalize this activity. Rowan v. United States Post Office, supra. Roesch has clearly not established beyond a reasonable doubt that Sec.53a-183(a)(2) does in fact substantially sweep into an area protected by the first amendment. His overbreadth challenge to that section must, accordingly, fail. Village of Hoffman Estates v. Flipside,Hoffman Estates, Inc., supra, 494.
Roesch also alleges that Sec. 53a-183(a)(2) is CT Page 6886 unconstitutionally vague.[9] In construing that section, the court is constrained to inquire into only those portions of the statute that were applied to the defendant in this case. The purpose of the vagueness doctrine is twofold. The doctrine requires statutes to provide fair notice of the conduct to which they pertain and to establish minimum guidelines to govern law enforcement. The United States Supreme Court has set forth standards for evaluating vagueness. "`First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning.' [Citation omitted.] `A law forbidding or requiring conduct in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process of law.'" State v.Indrisano supra, 802. "Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." Parker v. Levy, 417 U.S. 733, 757, 94 S.Ct. 2547,41 L.Ed.2d 439 (1974).
The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited. Coltonv. Kentucky, 407 U.S. 104, 110, 92 S.Ct. 1953, 32 L.Ed.2d 584
(1972).
In a facial vagueness challenge, the court must examine the challenged statute to see if it is immpermissibly vague in all of its applications.[10] A statute that is impermissibly vague in all its applications is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. Such a provision simply has no core. State v. Indrisano, supra, 804. A statute may, however, have an unmistakable core meaning of prohibited conduct but be vague in some of its applications. A defendant whose conduct clearly comes within a statute's unmistakable core of prohibited conduct may not raise a facial vagueness challenge to the statute.[11] Id., 804; Parker v. Levy, supra, 757. CT Page 6887
The conduct under examination in this case, i.e., in mailing over three hundred (300) items to the Ridgefield police department, many of which were harassing and threatening in content, strikes at the unmistakable core of Sec. 53a-183's prohibited conduct. As a result, as a hard "core" violator, Roesch may not raise a vagueness challenge to the statute. In addition, he has not borne his burden of proving that the subject section is vague in all of its applications.
The Supreme Court, in State v. Indrisano, supra, 809, upheld the constitutionality of the disorderly conduct statute (Sec.53a-182) against a facial vagueness challenge. That statute provides, inter alia, that a person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, he undertakes certain disturbing actions. The language is very similar to the statutory language under consideration in this case. The only difference between the mens rea portion of the statute under attack in Indrisano and Sec. 53a-183(a)(2) is the word "harass."[12] The court's construction of the words contained in the disorderly conduct statute in Indrisano is instructive and enlightening in determining what prohibited conduct is at the core of Sec. 53a-183(a)(2).
In Indrisano, the Supreme Court, in an effort to insulate the disorderly conduct statute from future vagueness challenges, applied two devices of statutory construction. It provided Webster's Third New International Dictionary definitions of the terms annoyance and alarm contained in the statute.[13]
Annoyance was defined as "vexation; a deep effect of provoking or disturbing." Id. Alarm was defined as "fear; filled with anxiety as to threatening danger or harm." Harass is defined as "to worry and impede by repeated attacks; to vex, trouble, or annoy continually or chronically." Webster's Third New International Dictionary, p. 1031 (1968).
It continued by asserting that the legislature intended the terms of the statute to be that perceived by a reasonable person operating under contemporary community standards. The concept of the reasonable person runs throughout the law and the concept of contemporary community standards has roots in obscenity law jurisprudence. Thus, this standard should ensure that a person of ordinary intelligence has reasonable notice of what the law permits or forbids. Grayned v. Rockford, 408 U.S. 104, 108,92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). CT Page 6888
Roesch's conduct and apparent intent, considered in light of the dictionary definitions and the standards set forth inIndrisano indicate that his activities fall within the core meaning of Sec. 53a-183. In sending the various items in the mail, his predominant intent was to cause what a reasonable person operating under contemporary community standards would consider a chronic or continual annoyance, a deep feeling of vexation or provocation, or a feeling of anxiety prompted by threatened danger or harm. In order to sustain a conviction for harassment, the state must begin by demonstrating that the defendant had such a state of mind. State v. Indrisano, supra, 809-11.
The court is convinced that the statute's core meaning, as set forth in the dictionary definitions sanctioned by our Supreme Court, is to criminalize repeated, intentionally vexatious conduct that is highly annoying to a reasonable person.[14]
This is the core type activity undertaken by Roesch. There is no constitutional insult which arises under a prosecution under the harassment statute. See Colton v. Kentucky, supra (discussing the "fairness" basis of a vagueness challenge). Since Roesch's conduct strikes at the core of the activity prohibited by Sec.53a-183(a)(2), he "may not raise a facial vagueness challenge to the statute." State v. Indrisano, supra; Parker v. Levy, supra ("[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness").
Roesch has failed to meet the heavy burden of proving beyond a reasonable doubt that Sec. 53a-183(a)(2)is unconstitutional in all of its applications. See State v. Indrisano, supra (in facial vagueness challenge the defendant must demonstrate that the statute is vague in all of its applications); see also L. Tribe, supra, Sec. 12-33, p. 1036 (same). The only argument contained in Roesch's brief states, in a conclusory fashion, that "[t]his statute provides no direction other than barring annoying or alarming communications. It is entirely subjective, without any real guidelines and a person of ordinary intelligence could not fairly know what conduct is prohibited." This argument is hardly sufficient.
The motion to dismiss the substitute information by arguing that Sec. 53a-62 and 53a-183 unconstitutionally infringe on hisfirst amendment rights to free speech and expression and that Sec. 53a-183(a)(2)is unconstitutionally overbroad and vague on its face is, accordingly, denied. CT Page 6889
Moraghan